# UNITED STATES DISTRICT COURT
# DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| IN RE CVS HEALTH CORPORATION SECURITIES ACT LITIGATION | Master File No. 1:19-cv-00434-MSM-LDA<br><br>CLASS ACTION<br><br>**LEAD PLAINTIFF'S OPPOSITION TO AETNA DIRECTORS' MOTION TO DISMISS** |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 2

ARGUMENT ........................................................................................................................ 5

I.      THE COMPLAINT ADEQUATELY ALLEGES SECTION 14(A) CLAIMS
        AGAINST THE AETNA DEFENDANTS .................................................................... 5

        A.      The Aetna Defendants Violated Section 14(a) ....................................... 6

        B.      The Aetna Defendants' Arguments Fail ................................................. 8

                1.      Section 14(a) Claims Do Not Require Scienter. ......................... 8

                2.      Lead Plaintiff Was Not Required To Plead The Particularized
                        Knowledge Of Each Aetna Defendant. .................................... 10

                3.      The Section 14(a) Claims Are Not Limited To Officers and
                        Directors Of CVS ................................................................ 13

II.     THE COMPLAINT ADEQUATELY ALLEGES CONTROL PERSON LIABILITY
        AGAINST THE AETNA DEFENDANTS UNDER SECTION 20(A) .......................... 16

III.    DEFENDANT BERTOLINI IS SUBJECT TO LIABILITY UNDER SECTIONS 11,
        12, AND 15 OF THE SECURITIES ACT .................................................................. 20

CONCLUSION .................................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Adams v. Standard Knitting Mills, Inc.*,
    623 F.2d 422 (6th Cir. 1980) ...............................................................................10

*Ambert v. Caribe Equity Grp., Inc.*,
    2011 WL 4626012 (D.P.R. Sept. 30, 2011)............................................................5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................................................5

*Baum v. Harman Int'l Indus., Inc.*,
    575 F. Supp. 3d 289 (D. Conn. 2021).....................................................................9

*Bricklayers & Masons Loc. Union No. 5 Ohio Pension Fund v. Transocean Ltd.*,
    866 F. Supp. 2d 223 (S.D.N.Y. 2012)................................................................9, 12

*In re Brooks Automation, Inc. Sec. Litig.*,
    2007 WL 4754051 (D. Mass. Nov. 6, 2007) .......................................16, 18, 19, 21

*Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.*,
    394 F.3d 126 (3d Cir. 2004)..................................................................................12

*Carriers Pens. & Welfare Fund v. Omnicare, Inc.*,
    719 F.3d 498 (6th Cir. 2013) ................................................................................13

*In re Cendant Corp. Litig.*,
    60 F. Supp. 2d 354 (D.N.J. 1999) .........................................................................15

*In re Credit Suisse-AOL Sec. Litig.*,
    465 F. Supp. 2d 34 (D. Mass. 2006) .....................................................................17

*Emps. Ret. Sys. of City of St. Louis v. Jones*,
    2021 WL 1890490 (S.D. Ohio May 11, 2021) ......................................................9

*In re Envision Healthcare Corp. Sec. Litig.*,
    2019 WL 6168254 (M.D. Tenn. Nov. 19, 2019) .............................................14, 22

*In re Exxon Mobil Corp. Sec. Litig.*,
    500 F.3d 189 (3d Cir. 2007)...................................................................................9

*Fresno Cnty. Emps.' Ret. Ass'n. v. comScore, Inc.*,
    268 F. Supp. 3d 526 (S.D.N.Y. 2017).............................................................9, 11, 12

*Herskowitz v. Nutri/Sys., Inc.*,
    857 F.2d 179 (3d Cir. 1988), cert. denied, 489 U.S. 1060 (1989) ............................................9

*Jaroslawicz v. M&T Bank Corp.*,
    962 F.3d 701 (3d Cir. 2020), cert. denied, 141 S.Ct. 1284 (2021) ............................................6

*Kaplan v. First Hartford Corp.*,
    447 F. Supp. 2d 3 (D. Mass. 2006) ......................................................................10

*Knurr v. Orbital ATK Inc.*,
    276 F. Supp. 3d 527 (E.D. Va. 2017) ................................................................10

*Lane v. Page*,
    581 F. Supp. 2d 1094 (D.N.M. 2008) ...............................................................12

*Lematta v. Casper Sleep, Inc.*,
    2022 WL 4637795 (E.D.N.Y. Sept. 30, 2022) ......................................................19

*Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*,
    238 F.3d 363 (5th Cir. 2001) ............................................................................16

*Lustgraaf v. Behrens*,
    619 F.3d 867 (8th Cir. 2010) ............................................................................19

*In re McKesson HBOC, Inc. Sec. Litig.*,
    126 F. Supp. 2d 1248 (N.D. Cal. 2000) .........................................................14, 15

*In re MF Glob. Holdings Ltd. Sec. Litig.*,
    982 F. Supp. 2d 277 (S.D.N.Y. 2013)..............................................................16

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970)........................................................................................5, 6

*In re Mindbody, Inc. Sec. Litig.*,
    489 F. Supp. 3d 188 (S.D.N.Y. 2020)..............................................................7

*Neely v. Bar Harbor Bankshares*,
    270 F. Supp. 2d 50 (D. Me. 2003) ..................................................................17

*Ocasio-Hernandez v. Fortuno-Burset*,
    640 F.3d 1 (1st Cir. 2011)................................................................................5

*In re Pattern Energy Grp. Inc. Sec. Litig.*,
    2022 WL 957761 (D. Del. Mar. 30, 2022) .......................................................16

*Pirani v. Slack Techs., Inc.*,
    445 F. Supp. 3d 367 (N.D. Cal. 2020), *aff'd*, 13 F.4th 940 (2021)..........................23

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.,*
    632 F.3d 762 (1st Cir. 2011) ..................................................................................20, 21, 22

*In re Reliance Sec. Litig.,*
    91 F. Supp. 2d 706 (D. Del. 2000) ...........................................................................13

*Rochez Bros., Inc. v. Rhoades,*
    527 F.2d 880 (3d Cir. 1975)................................................................................18, 19

*S.E.C. v. Das,*
    723 F.3d 943 (8th Cir. 2013) ...................................................................................13

*S.E.C. v. Hurgin,*
    484 F. Supp. 3d 98 (S.D.N.Y. 2020).........................................................................8

*S.E.C. v. Shanahan,*
    646 F.3d 536 (8th Cir. 2011) ...................................................................................10

*In re Sears, Roebuck & Co. Sec. Litig.,*
    291 F. Supp. 2d 722 (N.D. Ill. 2003) .......................................................................20

*Shaw v. Digital Equipment Corp.,*
    82 F.3d 1194 (1st Cir. 1996) ....................................................................................22

*Shidler v. All Am. Life & Fin. Corp.,*
    775 F.2d 917 (8th Cir. 1985) .....................................................................................9

*Silverstrand Invs. v. AMAG Pharms., Inc.,*
    12 F. Supp. 3d 241 (D. Mass. 2014) ...................................................................16, 22

*Silverstrand Invs. v. AMAG Pharms., Inc.,*
    707 F.3d 95 (1st Cir. 2013)...................................................................................5, 20

*In re Stone & Webster, Inc., Sec. Litig.,*
    424 F.3d 24 (1st Cir. 2005)................................................................................18, 19

*In re Storage Tech. Corp. Sec. Litig.,*
    630 F. Supp. 1072 (D. Colo. 1986).........................................................................17

*Tharp v. Acacia Commc'ns, Inc.,*
    321 F. Supp. 3d 206 (D. Mass. 2018) ......................................................................22

*In re Tronox, Inc. Sec. Litig.,*
    2010 WL 2835545 (S.D.N.Y. June 28, 2010) .........................................................19

*United Paperworkers Int'l Union v. Int'l Paper Co.,*
    985 F.2d 1190 (2d Cir. 1993)....................................................................................6

*In re Willis Towers Watson Plc Proxy Litig.*,
    439 F. Supp. 3d 704 (E.D. Va. 2020) .......................................................................... passim

*In re Willis Towers Watson Plc Proxy Litig.*,
    937 F.3d 297 (4th Cir. 2019) ......................................................................................5

*In re WorldCom, Inc. Sec. Litig.*,
    294 F. Supp. 2d 392 (S.D.N.Y. 2003).........................................................................19

*In re Zoran Corp. Deriv. Litig.*,
    511 F. Supp. 2d 986 (N.D. Cal. 2007) .......................................................................11


**STATUTES & RULES**

17 C.F.R.
    § 240.14 (Rule 14a-9) .................................................................................5, 6, 13

Federal Rules of Civil Procedure
    Rule 12(b)(6) .............................................................................................5

Private Securities Litigation Reform Act (15 U.S.C. § 78u)
    15 U.S.C. § 78u-4(b)................................................................................11, 12

Securities Act of 1933 (15 U.S.C. § 77a et seq.)
    15 U.S.C. § 77k.................................................................................7, 8, 20, 21
    15 U.S.C. § 77l.................................................................................16, 20, 21
    15 U.S.C. § 77o.................................................................................18, 20, 21, 23

Securities & Exchange Act of 1934 (15 U.S.C. § 78a et seq.)
    15 U.S.C. § 78n (§ 14(a)) ................................................................................ passim
    15 U.S.C. § 78t(a) (§ 20(a))............................................................................. passim

Lead Plaintiff Los Angeles Fire and Police Pensions ("Lead Plaintiff") submits this Opposition to the Aetna Directors' Motion to Dismiss and Joinder in the CVS Defendants' Motion to Dismiss the Amended Consolidated Class Action Complaint (ECF No. 53-1).[1] To the extent the Aetna Defendants incorporate the arguments raised in the CVS Defendants' Motion to Dismiss (ECF No. 52), Lead Plaintiff incorporates by reference the arguments set forth in Lead Plaintiff's Opposition to the CVS Defendants' Motion to Dismiss ("Opp. Br."). This memorandum specifically responds to the arguments raised primarily in the Aetna Defendants' motion to dismiss.

## PRELIMINARY STATEMENT

The Aetna Defendants contend that the claims against them are "manufactured." Not so. The claims against the Aetna Defendants are appropriate because the investors bringing suit are *Aetna shareholders* that approved CVS's acquisition of Aetna because the ***Aetna Defendants*** solicited those investors to approve the transaction, and told those investors they unanimously supported the transaction and had performed due diligence of CVS to ensure that its business was accurately portrayed in the Offering Documents. Consequently, the Aetna shareholders voted to approve the transaction and received CVS shares that then plummeted in price when the truth about CVS was revealed, wiping out nearly 30% of the stock consideration the Aetna shareholders had received in the acquisition. As set forth below, the Aetna Defendants' remaining assertions

---

[1] The "Aetna Directors," also collectively referred to herein as the "Aetna Defendants," are Defendants Fernando Aguirre, Mark T. Bertolini, Frank M. Clark, Molly J. Coye, Roger N. Farah, Jeffrey E. Garten, Ellen M. Hancock, Richard J. Harrington, Edward J. Ludwig, and Olympia J. Snowe.

misstate the applicable law, ignore key facts, and ask the Court to draw inferences in their favor at the pleading stage. The Aetna Defendants' Motion to Dismiss should be denied.[2]

## STATEMENT OF FACTS[3]

On December 3, 2017, Aetna and CVS announced the execution of a definitive merger agreement under which CVS would acquire Aetna, one of the country's largest health insurers. ¶¶71-72. Market commentators billed the merger as "critical" to CVS's ability to fend off looming competition from Amazon. ¶77.

Under the terms of the CVS-Aetna merger agreement, Aetna shareholders would receive $145 in cash and 0.8378 shares of CVS common stock for each share of Aetna stock. ¶71. To successfully close the acquisition, Aetna's shareholders had to approve the transaction through a shareholder vote to be held on March 13, 2018. ¶78. This approval was far from guaranteed, as some analysts had questioned whether Aetna should have obtained greater consideration. ¶79. To shore up Aetna shareholders' needed support for the deal, the Aetna Defendants (i.e., Aetna's then-CEO and Chairman, Defendant Bertolini, and Aetna's other directors) actively solicited votes in favor of the transaction from Aetna shareholders (who constitute the putative Class in this case).

Specifically, on December 4, 2017—the day after the acquisition was announced—Defendant Bertolini joined CVS representatives in a joint conference call during which Bertolini and those CVS Defendants spoke to investors about the Aetna acquisition. ¶84. Defendant

---

[2] All capitalized terms not defined in this brief have the meanings assigned to them in the Amended Consolidated Class Action Complaint (the "Complaint") (ECF No. 51). Paragraph (¶) references are to the Complaint. "Pl. Ex. _" refers to exhibits attached to the declaration of John Rizio-Hamilton, filed concurrently herewith, and "CVS Ex." and "Aetna Ex. _" refers to the exhibits attached to the CVS and Aetna Defendants' Motions to Dismiss. Unless otherwise stated, all emphasis is added, and internal quotation marks and citations are omitted.

[3] This memorandum of law incorporates by reference the statement of facts in Lead Plaintiff's Opposition to the CVS Defendants' Motion to Dismiss (the "Opp. Br."), filed contemporaneously with this memorandum. For the Court's convenience, this Statement of Facts primarily includes those facts most relevant to the claims against the Aetna Defendants and the arguments the Aetna Defendants raise in support of their dismissal motion.

Bertolini also appeared with CVS CEO Larry J. Merlo on CNBC that same day to discuss the purported benefits of the merger, and CVS and Aetna that day filed a slide presentation with the SEC, titled "CVS Health and Aetna Bring Unique and Differentiated Capabilities to the Combination," touting the deal. ¶85. On January 4, 2018, Defendants held an investor call and both CVS and Aetna filed a related presentation discussing the purported benefits of the proposed merger, expressly providing that "CVS Health, Aetna, their respective directors and certain of their respective officers may be considered participants in the solicitation of proxies in connection with the proposed transaction." *See* Aetna Ex. D at 4 (ECF 53-6).

To further solicit votes in favor of the merger from the Aetna shareholders, on February 9, 2018 Defendants filed the final registration statement with the Securities and Exchange Commission (the "Registration Statement") in connection with the proposed transaction, which included the final joint proxy statement/prospectus ("Joint Proxy/Prospectus" and collectively, the "Offering Documents"). ¶86. The Offering Documents included a joint letter to Aetna and CVS stockholders, signed by Defendant Bertolini on behalf of himself and the full Aetna board of directors and likewise by CVS's Chairman, Defendant Dorman, which represented that the CVS and Aetna directors unanimously recommended that CVS and Aetna shareholders vote to approve the Aetna acquisition. ¶33.

The Offering Documents expressly discussed the Aetna Defendants' access to critical nonpublic information about CVS and Aetna, as well as the Aetna Defendants' responsibility for the representations included in the Offering Documents. Among other things, the Offering Documents highlighted the "due diligence review of CVS Health" conducted by Aetna's advisors, "consistent with Aetna's instructions," specifically "so that Aetna and its board of directors could better understand and evaluate the proposed transaction," and discussed multiple meetings of the

Aetna directors concerning their advisors' due diligence, including a December 1, 2017 meeting at which "Aetna management . . . reviewed with the [Aetna] board of directors the operational, financial, and legal due diligence review of CVS Health conducted by Aetna . . .." *See* Pl. Ex. 2 at 2-3. Aetna's board considered, among other things, "the result of Aetna's due diligence investigation," as well as "the respective businesses, . . . financial condition, earnings, . . . competitive pressures . . . and prospects" of the two companies," and "trends and competitive developments in the retail and health care industries." *Id*. at 4. The Registration Statement also stated that "at completion of the merger, the size of the board of directors of CVS Health [will] be increased by three and the vacancies created thereby to be filled by Mark T. Bertolini, the Chairman and Chief Executive Officer of Aetna" among others. *Id*.

As discussed throughout the Complaint and Lead Plaintiff's Opposition to the CVS Defendants' motion to dismiss, the Offering Documents contained a number of false, affirmative statements about CVS's Long-Term Care business and Omnicare goodwill. ¶¶269-80. Defendants (including the Aetna Defendants) also made multiple additional false, positive statements to investors in connection with the CVS-Aetna acquisition between the announcement of the merger on December 3, 2017 and the date of the shareholder vote on March 13, 2018. *See generally* ¶¶313-19. For example, in January 2018, Defendants filed a presentation repeating that "[s]olid script growth in long-term care business driven by new initiatives tailored towards assisted living facilities and benefits from acquisition activity" was one of the "Drivers of Growth." ¶318. *See also, e.g.*, ¶¶87-89.

Based on the above representations, the Aetna shareholders voted to approve the deal. ¶91. When the CVS-Aetna acquisition closed on November 28, 2018, each Aetna common share was automatically cancelled and converted into 0.8378 of a share of CVS common stock and $145 in

cash. *Id*. Unfortunately, because the Aetna shareholders were denied truthful and complete disclosures, they were also denied the opportunity to make an informed voting decision. When investors finally learned the truth about CVS's Long-Term Care business, CVS's stock price plummeted, wiping out nearly 30% of the stock consideration the Aetna shareholders had received in the acquisition. ¶263.

## ARGUMENT

On a Rule 12(b)(6) motion to dismiss, the court must "view the well-pleaded facts in the light most favorable to the non-moving party, drawing all reasonable inferences in its favor." *Silverstrand Invs. v. AMAG Pharms., Inc.*, 707 F.3d 95, 101 (1st Cir. 2013); *In re Willis Towers Watson plc Proxy Litig.*, 937 F.3d 297, 302 (4th Cir. 2019) (in a Section 14(a) case, explaining that when reviewing a motion to dismiss the court "accept[s] all well-pleaded allegations as true and construe[s] the facts in the light most favorable to the plaintiffs"). The Court must deny a Rule 12(b)(6) motion if the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). All that is required is "fair notice to the defendants and . . . a facially plausible legal claim." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011); *Ambert v. Caribe Equity Grp., Inc.*, 2011 WL 4626012, at *3 (D.P.R. Sept. 30, 2011). The Complaint meets this standard.

## I.    THE COMPLAINT ADEQUATELY ALLEGES SECTION 14(A) CLAIMS AGAINST THE AETNA DEFENDANTS

Count IV of the Complaint asserts a claim under Section 14(a) of the Exchange Act and Rule 14a-9 against the Aetna Defendants. Section 14(a) gives rise to liability where defendants make materially false or misleading statements or omissions in connection with the solicitation of shareholder votes. *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 385 (1970). Section 14(a) "ensur[es] full and fair disclosure to shareholders" so that they are "able to make an informed choice when

they are consulted on corporate transactions." *Id*. at 381-85. Section 14(a) "seeks to prevent management or others from obtaining authorization for corporate actions by means of deceptive or inadequate disclosures in proxy solicitations." *Jaroslawicz v. M&T Bank Corp.*, 962 F.3d 701, 709-10 (3d Cir. 2020). Rule 14a-9 aims to "preserv[e] for all shareholders who are entitled to vote . . . the right to make decisions based on information that is not false or misleading." *United Paperworkers Int'l Union v. Int'l Paper Co.*, 985 F.2d 1190, 1197-98 (2d Cir. 1993)*.*

The Aetna Defendants are liable for their misleading and inadequate disclosures in the proxy solicitations that deprived the Aetna investors of their fully informed vote.

### A.    The Aetna Defendants Violated Section 14(a)

The Complaint adequately alleges liability under Section 14(a) against the Aetna Defendants because they made and/or permitted the use of their names to make solicitations that contained material misstatements and omissions to Aetna shareholders for votes in favor of the acquisition. Specifically, the Aetna Defendants made materially misleading statements and omissions in the Offering Documents. ¶¶269-312, 316; *see* Opp. Br. at Section I.A. The Offering Documents included the joint proxy statement and prospectus, which the directors of both companies authorized to be sent to their respective shareholders. The Offering Documents also included a cover letter on joint letterhead from CVS and Aetna, "[o]n behalf of the boards of directors of CVS Health and Aetna," and represented that "Aetna's board of directors . . . unanimously recommends that Aetna shareholders vote . . . 'FOR' the approval and adoption of the merger agreement." Aetna Ex. E at 5 (ECF 53-7).

The Aetna Defendants are also responsible for the proxy solicitations outside the Offering Documents that contained misstatements, such as (i) the December 2017 statements during a joint conference call and presentation pointing to the LTC business as a source of the combined company's growth that would "enable [the combined company] to deliver superior outcomes at

lower cost" (¶¶314-15); and (ii) statements made in a January 4, 2018 investor presentation identifying "[s]olid script growth" in the LTC business as one of the combined company's "Drivers of Growth" (¶¶318-19); *see* Opp. Br. at 69-71. Indeed, the January 4, 2018 presentation to investors that expressly identified "CVS Health, Aetna, their respective directors and certain of their respective executive officers" as "participants in the solicitation of proxies in connection with the proposed transaction." Aetna. Ex. D at 4 (ECF 53-6).

Having authorized the joint proxy materials, provided their unanimous recommendation of the transaction to solicit the votes of Aetna shareholders, and participated in the additional proxy solicitations, the Aetna Defendants properly face liability under Section 14(a). Section 14(a) makes it "unlawful for any person ... to solicit or to *permit the use of his name to solicit any proxy* or consent or authorization in respect to any security" in contravention of SEC regulations. 15 U.S.C. § 78n. "Plaintiff must only demonstrate that Defendants were subject to and failed to comply with the applicable legal obligation, specifically, not to associate themselves with a proxy statement that contained false or misleading statements or omissions." *In re Willis Towers Watson Plc Proxy Litig.*, 439 F. Supp. 3d 704, 715 (E.D. Va. 2020) (sustaining Section 14(a) claims against the acquiror and acquiree for disclosures and omissions in proxy materials); *see also In re Mindbody, Inc. Sec. Litig.*, 489 F. Supp. 3d 188, 218 (S.D.N.Y. 2020) (finding director liable under Section 14(a) because, although he did not make a statement, "as a member of the board of directors, [he] solicited a proxy via a statement containing misleading statements or omissions, putting him squarely within the ambit of Section 14(a)" where the proxy statement was furnished to shareholders on behalf of the board).

Finally, Defendant Bertolini is liable for the additional reason that he was a "person who, with his consent, is named in the registration statement as being or about to become a director."

17 U.S.C. § 77k(a)(3); ¶32. *See also, e.g.*, *S.E.C. v. Hurgin*, 484 F. Supp. 3d 98, 117 (S.D.N.Y. 2020) (finding director who "consented to the use of his name 'as a person who would become a director of Ability Inc.' to solicit proxies" had "put his reputation in issue in the proxy materials such that he owed a duty to the Cambridge shareholders" sufficient for 14(a) liability).

**B.    The Aetna Defendants' Arguments Fail**

The Aetna Defendants assert that they are not liable under Section 14(a), and join the CVS Defendants' arguments that (i) Lead Plaintiff's Section 14(a) claim is supposedly time-barred (*see* Aetna Br. at 8); and (ii) the proxy materials purportedly contained no material misrepresentations or omissions (*see* Aetna Br. at 8-9). Each of those arguments fails, as discussed in Lead Plaintiff's Opposition to the CVS Defendants' motion; Lead Plaintiff will not repeat those arguments here. *See* Opp. Br. at Section II.

In addition, the Aetna Defendants make several unique arguments, including that (i) Lead Plaintiff's Section 14(a) claim must fail because the Complaint does not contain allegations satisfying a purported heightened "requisite mental state," i.e., scienter, that they claim is required for Section 14(a) claims (*see* Aetna Br. at 9); (ii) even under a negligence standard, the Complaint fails to plead that the Aetna Defendants should have known of the misstatements in the proxy solicitations (*see id.* at 10-14); (iii) they should escape liability because the statements concerned CVS's business, not Aetna's business; and (iv) they cannot be liable for their misleading statements outside of the Offering Documents because those statements were "filed with the SEC by CVS, not Aetna" (*see id.* at 14-15). Each of these arguments also fails.

**1.    Section 14(a) Claims Do Not Require Scienter**

Defendants misstate the law when they contend that to state a claim under Section 14(a), Lead Plaintiff must plead that "[each] defendant acted with the requisite state of mind," and further, that the required state of mind is "scienter." Aetna Br. at 9-13. To plead a Section 14(a) claim, a

plaintiff need not allege *any* state of mind, because Section 14(a) has no state-of-mind element. Rather, Lead Plaintiff need only plead negligence, which is not a state of mind. *See Towers Watson*, 439 F. Supp. 3d at 715 ("negligence is *not* a state of mind but a type of culpable conduct, objectively determined"); *Emps. Ret. Sys. of City of St. Louis v. Jones*, 2021 WL 1890490, at \*13 (S.D. Ohio May 11, 2021) ("[T]he Court . . . presumes that Congress would explicitly include a heightened level of culpability if it intended to do so. In the absence of such language, and in accordance with courts within and outside this Circuit, this Court analyzes Plaintiffs' Section 14(a) claim under the negligence standard."); *In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d 189, 196 (3d Cir. 2007) ("Violations of § 14(a) . . . may be committed without scienter; in other words, no culpable intent is required."); *Bricklayers & Masons Loc. Union No. 5 Ohio Pension Fund v. Transocean Ltd.*, 866 F. Supp. 2d 223, 240 (S.D.N.Y. 2012) (adopting holding of Seventh Circuit in *Beck v. Dobrowski*, 559 F.3d 680 (7th Cir. 2009) that "negligence is not a state of mind; it is a failure, whether conscious or even unavoidable (by the particular defendant, who may be below average in his ability to exercise due care), to come up to the specified standard of care").

As this authority makes clear, courts widely reject the assertion that Section 14(a) requires scienter. *See, e.g.*, *Herskowitz v. Nutri/Sys., Inc.*, 857 F.2d 179, 190 (3d Cir. 1988) ("reject[ing] the application of a scienter standard" under Section 14(a)); *Shidler v. All Am. Life & Fin. Corp.*, 775 F.2d 917, 927 (8th Cir. 1985) (applying negligence standard to Section 14(a) claim); *Jones*, 2021 WL 1890490, at \*13 (same); *Baum v. Harman Int'l Indus., Inc.*, 575 F. Supp. 3d 289, 301 (D. Conn. 2021) (same); *Towers Watson*, 439 F. Supp. 3d at 713 (same); *Fresno Cnty. Emps.' Ret. Ass'n. v. comScore, Inc.*, 268 F. Supp. 3d 526, 559 (S.D.N.Y. 2017) ("The better reasoned cases have followed . . . *Beck v. Dobrowski* . . . which held that the elevated pleading standard does not apply to Section 14(a) claims that sound in negligence because 'negligence is not a state of

9

mind.'"); *Kaplan v. First Hartford Corp.*, 447 F. Supp. 2d 3, 9 (D. Mass. 2006) (entering judgment for plaintiff on Section 14(a) claim where "[a]lthough plaintiff provided no direct proof that FHC acted in bad faith, FHC was negligent with respect to the composition of its proxy statements and observance of corporate formalities").

Although Defendants' cited cases, *Adams v. Standard Knitting Mills, Inc.*, 623 F.2d 422 (6th Cir. 1980) and *S.E.C. v. Shanahan*, 646 F.3d 536, 546–47 (8th Cir. 2011), imposed a scienter requirement on Section 14(a) claims, those cases are widely recognized as being in the minority. *See Knurr v. Orbital ATK Inc.*, 276 F. Supp. 3d 527, 540 (E.D. Va. 2017) ("the majority of circuits to address the question whether § 14(a) requires negligence or fraud have found that § 14(a) requires only negligence as the requisite standard of culpability . . . if Congress wanted § 14(a) to require a showing of scienter, it would have included those fraud-related words . . . in the text of the statute"). What's more, *Adams* extended a scienter requirement only "insofar as accountants' liability is concerned," and not to corporate directors, in part because accountants do not owe fiduciary duties to shareholders, 623 F.2d at 428, 431—facts that starkly contrast with the Aetna Defendants' fiduciary duties to the Aetna shareholders here. The Aetna Defendants are not outsiders; they are the CEO and directors of a company involved in a merger that issued joint proxy solicitations after doing diligence on the deal. Thus, the law is clear that claims under Section 14(a) do not require scienter.

### 2.    Lead Plaintiff Was Not Required To Plead The Particularized Knowledge Of Each Aetna Defendant

The Aetna Defendants contend, incorrectly, that they cannot be liable for the misstatements in the Offering Documents even under the negligence standard because they "sat on the board of a separate public company" and supposedly therefore "could [not] know or even suspect that CVS's prior public SEC filings were somehow misleading." Aetna Br. at 12. This argument fails

for several reasons. To plead negligence, a plaintiff is not required to allege "what each individual Aetna Director knew or should have known" (Aetna Br. at 11), or otherwise plead that specific individual defendants "knew of the facts allegedly omitted from the proxy statement" (*id*. at 13). It is well-established that the existence of a material misstatement or omission is, by itself, sufficient to establish negligence at the pleading stage on Section 14(a) claims. *See Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 560 (S.D.N.Y. 2017) ("[a]s a matter of law, the preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact is sufficient to satisfy the ... negligence standard"); *In re Zoran Corp. Deriv. Litig.*, 511 F. Supp. 2d 986, 1015-16 (N.D. Cal. 2007) (alleged misstatements by directors "certainly lead to the inference that the . . . committee neglected its duty"). As one court held after surveying the case law:

> For the purposes of Section 14(a), "negligence" is the failure to comply with the legal obligation not to solicit a proxy with false or misleading statements or omissions, imposed on an identified category of persons, ***irrespective of any subjective intent or level of diligence or care. For these reasons, Plaintiff does not need to prove, as Defendants contend, that the Defendants knew or should have known the proxy was false***[.]

*Towers Watson*, 439 F. Supp. 3d at 715.

Moreover, although Defendants effectively acknowledge that negligence (not scienter) is all that Section 14(a) requires, they incorrectly contend that the Complaint must allege "particularized" facts demonstrating a "strong inference" of negligence, akin to a scienter analysis. Aetna Br. at 10. Not so. Notably, there are two distinct prongs to the PSLRA. The first prong, Section 21D(b)(1), requires plaintiffs to "specify each statement alleged to have been misleading, the . . . reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . . state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B). Complaints alleging misleading statements and

omissions, as this case does, need only meet this prong. 15 U.S.C. § 78u-4(b)(1); *see also Towers Watson*, 439 F. Supp. 3d at 715. As discussed above and in Lead Plaintiff's Opposition the CVS Defendants' motion to dismiss, the Complaint does so. *See* ¶¶264-319; Opp. Br. at Section II.A.

The second prong, Section 21D(b)(2), only applies to claims with "a particular state of mind" requirement necessary to recover damages. This second prong requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). Defendants ignore that the PSLRA 's requirement to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" applies only to claims under the second prong, i.e., those with a "particular state of mind" requirement. As discussed above, Section 14(a) does not have a state of mind requirement. Thus, "the PSLRA's heightened scienter pleading requirement, relevant only to 'state of minds,' does ***not*** require particularized allegations of negligence in Section 14(a) claims." *Towers Watson*, 439 F. Supp. 3d at 715; *see also* authorities *supra* at 8-10.

Defendants' cited cases are inapt, and courts have rejected them. *See, e.g.*, *Lane v. Page*, 581 F. Supp. 2d 1094, 1116 (D.N.M. 2008) (rejecting *Knollenberg v. Harmonic, Inc.*, 152 F. App'x 674, 682-83 (9th Cir. 2005) (cited in Aetna Br. at 10), as "not . . . completely persuasive"); *Transocean*, 866 F. Supp. 2d at 240-41 (rejecting *Bond Opportunity Fund v. Unilab Corp.*, 2003 WL 21058251, at *3 (S.D.N.Y. May 9, 2003) (cited in Aetna Br. at 10-11), in favor of *Beck*, which was "more persuasive," and "conclud[ing] that § 78u-4(b)(2) is inapplicable to [Section 14(a)] claims"); *Fresno Cnty. Emps.' Ret. Ass'n*, 268 F. Supp. 3d at 559 (same). And in *Chubb* (cite in Aetna Br. at 11), the court acknowledged that the PSLRA's heightened pleading requirements apply only for claims "ground[ed] . . . in fraud," rather than negligence. *Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144-45 (3d Cir. 2004).

Section 14(a), like Section 11 (as noted in Opp. Br. at 25), is a strict liability claim in that no scienter is required. *See, e.g.*, *Towers Watson*, 439 F. Supp. 3d at 715. Although Defendants characterize this as a "radical expansion" (Aetna Br. at 11, n.7), as modern case law points out, it is in no way "unique for a securities claim to approximate strict liability." *Towers Watson*, 439 F. Supp. 3d at 715, n. 7. Indeed, Defendants nowhere contest that Section 11 is a strict liability cause of action, and Defendants' cases on Section 14(a) support Lead Plaintiff. For example, in *S.E.C. v. Das*, 723 F.3d 943, 953-54 (8th Cir. 2013) (cited in Aetna. Br. at 11, n.7), the Eight Circuit affirmed the district court's instruction that no scienter is required under a Section 14(a) claim based on the Circuit's "previous holdings referencing a negligence standard" and a collection of cases from other Circuits declining to impose a scienter element on Section 14(a). Moreover, the Sixth Circuit in *Omnicare* discussed Section 14(a) only in dicta, as context in considering liability under the Securities Act claims. *Carriers Pens. & Welfare Fund v. Omnicare, Inc.*, 719 F.3d 498, 507, n.3 (6th Cir. 2013) (cited in Aetna Br. at 11, n.7); *see Das*, 723 F.3d at 953 n.5 (noting *Omnicare* discussion of 14(a) was "dicta").

### 3. The Section 14(a) Claims Are Not Limited To Officers And Directors Of CVS

The Aetna Defendants suggest that they are insulated from liability as a matter of law because the misstatements and omissions did not concern Aetna's own financial condition (Aetna Br. at 12), but their argument contradicts Section 14(a), which imposes liability on anyone who solicits a proxy with information that is materially inaccurate or incomplete, including even an outside accountant or financial advisor. *See generally In re Reliance Sec. Litig.*, 91 F. Supp. 2d 706, 728 (D. Del. 2000) (permitting "a finding of liability under Rule 14a-9 by those who make material misstatements or omissions in proxy statements, regardless if the defendant is an outside expert that does not benefit from the outcome of the solicitation"). The Aetna Defendants have not

cited any case embracing the broad proposition that a solicitor is liable only for misstatements and omissions that concern itself. Even Defendants' own authorities reject that proposition. *See In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1267 n.9 (N.D. Cal. 2000) ("The court is also not persuaded that McKesson's statement in the Joint Proxy Statement that it was not warranting HBOC's financials automatically insulates McKesson from liability for republishing those financials."). Here, the Proxy was a ***joint*** Proxy issued by CVS ***and Aetna***; the Aetna Defendants thus had a duty to ensure it was accurate and complete. *See In re Envision Healthcare Corp. Sec. Litig.*, 2019 WL 6168254, at *29 (M.D. Tenn. Nov. 19, 2019) (sustaining Section 14(a) claims against directors of AmSurg where omissions concerned its merger partner Envision and the subsidiary EmCare).

The Aetna Defendants' attempt to wash their hands of liability because the misstatements concerned CVS also makes no sense: this suit is brought on behalf of Aetna shareholders. The Aetna Defendants had the opportunity to discover the red flags pled in the Complaint and the obligation to do so. Indeed, a major part of the consideration for Aetna shareholders was the value of the CVS stock due to them, and the exchange ratio to be used. The Aetna Defendants therefore had a duty to conduct due diligence on the state and value of CVS's business, on which the value of the CVS stock depended, before agreeing to and recommending the exchange ratio to their own shareholders. The Aetna Defendants ***assured investors that they did so***. The Offering Documents pointed to the "due diligence review of CVS Health" conducted by Aetna's advisors, "consistent with Aetna's instructions," specifically "so that Aetna and its board of directors could better understand and evaluate the proposed transaction," and discussed multiple meetings of the Aetna directors concerning their advisors' due diligence of CVS, including a December 1, 2017 meeting at which "Aetna management . . . reviewed with the [Aetna] board of directors the operational,

financial, and legal due diligence review of CVS Health conducted by Aetna, including with respect to certain litigation and regulatory matters." Pl. Ex. 2 at 2-3. Aetna's board considered, among other things, "the results of Aetna's due diligence investigation," as well as "the respective businesses, . . . financial condition, earnings, . . . competitive pressures . . . and prospects" of the two companies, and "trends and competitive developments in the retail and health care industries." *Id*. at 4. The Aetna Defendants cannot trumpet their diligence of CVS, recommend the exchange ratio to Aetna shareholders based on that diligence, and then wash their hands of responsibility for material misstatements and omissions concerning CVS.

The contrast between this case and *McKesson*, which the Aetna Defendants rely on to support their defense (Aetna Br. at 13), shows their argument lacks merit. There, the court warned that "anyone who knowingly participates in the distribution [of] a proxy solicitation should . . . expect to be held liable for false statements to all affected shareholders," but dismissed Section 14(a) claims against the directors of an acquiror in light of the plaintiffs' allegations that the acquiror was "kept in the dark" about a massive accounting fraud where documents were "hidden . . . in places inaccessible to auditors." *McKesson*, 126 F. Supp. 2d at 1266-68. Lead Plaintiff nowhere alleges that Aetna Defendants were kept in the dark here; by contrast, the red flags were open and prevalent at CVS, and the Aetna Defendants stated they performed diligence before soliciting shareholder votes in favor of CVS's acquisition.

At best, the Aetna Defendants' arguments raise a due-diligence affirmative defense, which is highly fact-specific and should not be considered at the pleading stage. *See, e.g.*, *In re Cendant Corp. Litig.*, 60 F. Supp. 2d 354, 378 (D.N.J. 1999) (directors' "argument that they are immune from liability [under Section 14(a)] because they were entitled to rely upon [auditor's] expert evaluation of the financial statements is an affirmative defense which requires a factual inquiry

inappropriate to a motion to dismiss"). *Cf. Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 369 (5th Cir. 2001) (due diligence in response to a § 11 claim "is an affirmative defense that must be pleaded and proved"); *In re MF Glob. Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 322 (S.D.N.Y. 2013) (collecting cases). The Aetna Defendants include Defendant Bertolini; for these same reasons, Bertolini's contention that his purported diligence forecloses his liability under Section 12(a)(2) (Aetna Br. at 20-21) fails.

Contrary to the Aetna Defendants' assertion (Aetna Br. at 14), the fact that CVS and not Aetna filed the additional proxy solicitations with the SEC is of no moment. *See* Aetna Br. at 14. The Aetna Defendants, as well as CVS and its directors and officers, were identified as "participants in the solicitation of proxies in connection with the proposed transaction," regardless of which company actually filed the documents. Defendants have cited no authority requiring that Aetna itself filed the documents.

## II.  THE COMPLAINT ADEQUATELY ALLEGES CONTROL PERSON LIABILITY AGAINST THE AETNA DEFENDANTS UNDER SECTION 20(A)

Section 20(a) of the Exchange Act provides for joint and several liability for "[e]very person who, directly or indirectly, controls any person liable" under Section 14(a). 15 U.S.C. §78t(a). The standard for Section 15 and 20(a) is the same. *See, e.g.*, *In re Brooks Automation, Inc. Sec. Litig.*, 2007 WL 4754051, at *13 (D. Mass. Nov. 6, 2007). In order to plead control person liability, a plaintiff need allege only (i) an underlying violation by the controlled person or entity, and (ii) that the defendants controlled the violator. *Silverstrand Invs. v. AMAG Pharms., Inc.*, 12 F. Supp. 3d 241, 248 (D. Mass. 2014); *In re Pattern Energy Grp. Inc. Sec. Litig.*, 2022 WL 957761, at *8 (D. Del. Mar. 30, 2022) (declining to dismiss Section 20(a) claim where complaint "plausibly allege[d] a Section 14(a) violation"). The Complaint more than meets this standard.

*First*, the Complaint pleads primary violations of Section 14(a) of the Exchange Act. *See* Opp. Br. at Section II; *see also supra* at Section I.

*Second*, the Complaint sufficiently alleges that each Aetna Defendant was a controlling person. *See, e.g.*, ¶¶360-81. Control exists whenever (i) the person exercised control over the general operations of the company, and (ii) the person possessed (even if she did not exercise) the power to determine the specific acts or omissions upon which the underlying violation is predicated. *See In re Credit Suisse-AOL Sec. Litig.*, 465 F. Supp. 2d 34, 59 (D. Mass. 2006). Directors are presumed to be control persons. *See Neely v. Bar Harbor Bankshares*, 270 F. Supp. 2d 50, 53 (D. Me. 2003); *In re Storage Tech. Corp. Sec. Litig.*, 630 F. Supp. 1072, 1079 (D. Colo. 1986) ("the individual defendants, by virtue of their positions as directors . . . clearly possessed the power to direct or cause the direction of the management and policies . . . through actions as directors, thus these defendants are prima facie controlling persons").

The Complaint adequately alleges control for all the Aetna Defendants because, as the directors of Aetna, they personally had—and exercised—the power to direct Aetna's actions when Aetna issued the misleading Offering Documents such as the Joint Proxy/Prospectus. The Aetna Defendants approved the merger and "unanimously recommend[ed] that Aetna shareholders vote [for] the approval and adoption of the merger agreement." Aetna Ex. E at 5; *id*. at 4-5 (Registration Statement detailing directors' exercise of authority over the merger). Further, the Offering Documents were issued by CVS and Aetna to both CVS *and* Aetna shareholders "on behalf of the boards of directors of CVS Health *and* Aetna," demonstrating that the Aetna directors authorized and controlled the decision to undertake the corporate act at the heart of this case and to issue the misstatements. CVS Ex. 1 at 4. And specifically regarding Bertolini, as Aetna's CEO and Chairman, Bertolini also possessed, and indeed exercised, control over Aetna and the

misstatements at issue. As CEO, Bertolini spearheaded the decision to enter into the merger; he then signed the letter in the Registration Statement addressed to both CVS and Aetna shareholders recommending the merger, and consented to being named in it as a person about to become a director of CVS. ¶32.

Contrary to what the Aetna Defendants contend (*see* Aetna Br. at 16), given the Aetna Defendants' control over Aetna, the Offering Documents, and the merger, there is no additional requirement that they also controlled CVS. *See, e.g.*, *Willis Towers*, 439 F. Supp. 3d at 716–19 (finding Section 20(a) control liability for directors of both acquirer and acquiree because "they had the ability to control the activities of their [respective] corporations, including in the issuance of the proxy statements" and/or they signed certain filings that contained the misstatements).

The Aetna Defendants once more misstate Lead Plaintiff's pleading requirements, claiming that to plead control person liability under Section 20, Lead Plaintiff must allege "culpable participation." Aetna Br. at 16. There is no requirement in the First Circuit that plaintiffs plead "culpable participation" to establish control person liability. Rather, the burden is on defendants to establish good faith as an affirmative defense. *See Brooks Automation*, 2007 WL 4754051, at *14 ("because the language of [Section 20(a)] places the burden on the defendant to establish his or her good faith as an affirmative defense, plaintiff need not make a prima facie showing of defendant's culpable participation"); *see also In re Stone & Webster, Inc., Sec. Litig.*, 424 F.3d 24, 26 (1st Cir. 2005) (holding good faith is part of defendants' affirmative defense). For these same reasons, Bertolini's contention that Lead Plaintiff is required to plead his "culpable participation" to establish his liability under Section 15 (Aetna Br. at 23) fails.

Defendants' cited authority—which is solely from the Second Circuit's minority view on culpable participation— including *Rochez Bros., Inc. v. Rhoades* and *Friedman v. JP Morgan*

*Chase & Co.* (Aetna Br. at 3, 15, n.9, 16, 23), is once again unhelpful. ***First***, as the Eighth Circuit acknowledged in reaffirming its position rejecting the requirement for "culpable participation by a defendant in an action for control-person liability," there is a Circuit split on this issue. *Lustgraaf v. Behrens*, 619 F.3d 867, 877 (8th Cir. 2010) (rejecting *Rochez Bros., Inc. v. Rhoades*, 527 F.2d 880, 890 (3d Cir. 1975)); *see also Brooks Automation, Inc.*, 2007 WL 4754051, at *13 (acknowledging circuit split). The First Circuit has not held that culpable participation is required and has stated that under Section 20(a), "good faith" is "a part of the defendant's affirmative defense," and not a plaintiff's prima facie case. *Stone & Webster*, 424 F.3d at 26.

***Second***, even in the Second Circuit, the analysis concerning culpable participation is merely to establish the degree of control, and is not akin to a scienter analysis. *See In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 415 (S.D.N.Y. 2003) ("The concept of culpable participation describes that degree of control which is sufficient to render a person liable under Section 20(a)"); *In re Tronox, Inc. Sec. Litig.*, 2010 WL 2835545, at *15 (S.D.N.Y. June 28, 2010) ("[w]hile recognizing that other courts in this Circuit have held that proof of recklessness is a necessary element of Section 20(a), and thus, must meet the PSLRA's pleading requirements, I continue to hold that scienter is not an essential element of a Section 20(a) claim"). Thus, even if some culpable participation must be pleaded to state a claim under Sections 15 or 20(a), this requirement is far less than the scienter standard and requires no more than pleading that the defendants, as here, signed the documents containing the misstatements and/or knew or should have known of the misstatements. *See Lematta v. Casper Sleep, Inc.*, 2022 WL 4637795, at *15 (E.D.N.Y. Sept. 30, 2022) (finding defendants liable under Section 20(a) where they were alleged to have "participated in the misstatements by signing" the documents containing those misstatements).

In any event, "[g]iven the 'highly factual nature' of the control person inquiry, resolving that issue on a motion to dismiss is often inappropriate." *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 776 (1st Cir. 2011); *see also In re Sears, Roebuck & Co. Sec. Litig.*, 291 F. Supp. 2d 722, 727 (N.D. Ill. 2003) ("Determination of whether an individual defendant is a "'controlling person' under § 20(a) is a question of fact that cannot be determined at the pleading stage.").

## III.    DEFENDANT BERTOLINI IS SUBJECT TO LIABILITY UNDER SECTIONS 11, 12, AND 15 OF THE SECURITIES ACT

Counts I and II of the Complaint assert claims under Sections 11 and 12(a)(2) of the Securities Act against Defendant Bertolini for the materially inaccurate statements and omissions in the Offering Documents. Count III of the Complaint asserts claims under Section 15 of the Securities Act against Defendant Bertolini for secondary liability as a "control" person for an entity liable under Sections 11 or 12(a)(2).

For the reasons stated in the Opposition to the CVS Defendants' motion, Lead Plaintiff adequately alleges that Defendants made materially untrue statements and omissions in the Offering Documents, including about (i) the value of the LTC business and the Omnicare goodwill, (ii) whether Defendants' accounting for the goodwill complied with GAAP, (iii) the risks facing the LTC business, and (iv) known material trends and uncertainties that had or were reasonably likely to impact the Company's financial performance. Those allegations suffice to state a claim under both Sections 11 and 12(a)(2), which require only that Lead Plaintiff allege a materially misleading statement or omission in a registration statement or prospectus. *Silverstrand*, 707 F.3d at 107 (collecting cases). Once a material misstatement or omission is shown, Section 11 "imposes strict liability on issuers of a security." *Id*. at 102; 15 U.S.C. § 77k(b)(3)(A).

Moreover, Section 15 of the Securities Act provides for joint and several liability for persons who "control" an entity liable under Sections 11 or 12(a)(2). 15 U.S.C. § 77o. The standard for Section 20(a), as detailed above, is the same as for Section 15. *See, e.g.*, *Brooks Automation*, 2007 WL 4754051, at \*15.

Defendants contend that Defendant Bertolini's signature on the joint letter in the proxy statement is insufficient to establish his liability under Section 11, 12, or 15(a). Aetna Br. at 16-17. This argument ignores key facts and controlling law, and therefore fails.

To start, Defendant Bertolini is liable under Section 11. Defendant Bertolini asserts, incorrectly, that he cannot be liable under Section 11 because he did not "sign the Registration Statement." *Id.* at 21. This argument ignores the language of Section 11, which includes "every person who, with his consent, is named in the registration statement as being or about to become a director." 15 U.S.C. § 77k(a)(3). That is what Bertolini did here, as the Registration Statement stated that "at completion of the merger, the size of the board of directors of CVS Health [will] be increased by three and the vacancies created thereby to be filled by Mark T. Bertolini, the Chairman and Chief Executive Officer of Aetna" among others. CVS Ex. 1 at 25; *see* ¶32.

Defendant Bertolini is also liable under Section 12(a) as a statutory seller. As the Aetna Defendants themselves concede, Section 12(a) liability applies not only to those who directly sold stock to investors, but also to those who solicited purchasers. Aetna Br. at 17-18 (citing *Pinter* v. *Dahl,* 486 U.S. 622, 642, 647 (1988)); *see also Nomura*, 632 F.3d at 776. Here, by definition, CVS (as the issuer) is the seller, and is statutorily liable. The Complaint further alleges that Mr. Bertolini: (i) along with the other Individual Securities Act Defendants, "promoted, solicited and/or sold CVS common stock to Lead Plaintiff and the Class for the benefit of them and their associates" (¶346); (ii) signed the joint letter in the Offering Documents soliciting investors to

approve the Aetna acquisition on behalf of the full Aetna and CVS boards of directors (¶32); (iii) consented to being named in the Offering Documents as an imminent director of CVS (*id.*); and (iv) spoke to investors to solicit votes during conference calls, media interviews, and in additional materials provided to investors (¶¶84-85, 90, 318).

These allegations are more than sufficient to plead solicitation. *See, e.g.*, *Nomura*, 632 F.3d at 776 (sufficient that defendants "*promoted* and *sold* the [c]ertificates to [the p]laintiffs and the members of the [c]lass"); *Silverstrand*, 12 F. Supp. 3d at 254 ("participation in producing the [p]rospectus and in activities related to the promotion of the sale of stock" sufficient); *Tharp v. Acacia Commc'ns, Inc.*, 321 F. Supp. 3d 206, 220 (D. Mass. 2018) ("preparing, disseminating and presenting to potential investors and otherwise eliciting investor participation" sufficient); *see also Envision Healthcare*, 2019 WL 6168254, at *28 (where "the registration statement specifically states that the board is 'soliciting proxies'" sufficient).

Mr. Bertolini contends that more is required. Not so. *Shaw v. Digital Equipment Corp.*, on which Defendant Bertolini relies (Aetna Br. at 17-20), states that "neither involvement in preparation of a registration statement or prospectus nor participation in 'activities' relating to the sale of securities, *standing alone*," suffices as solicitation. 82 F.3d 1194, 1216 (1st Cir. 1996). *Silverstrand* clarified that such activities *together*—as alleged here—suffice. 12 F. Supp. 3d at 254 ("participation in producing the Prospectus ***and*** in activities related to the promotion of the sale of stock" establishes solicitation). While Defendant Bertolini contends that he cannot be liable because he did not "communicate" with shareholders (Aetna Br. at 18), he did—he recommended that they approve the merger in the Offering Documents, he spoke to investors during joint Aetna and CVS investor calls, and he performed joint interviews on major news networks. ¶¶32, 84-85.

In any event, whether or not Defendant Bertolini, who consented to the use of his name in the Offering Documents and stood to and did become a director of the new company upon the consummation of the Aetna acquisition, actually solicited sales is "a factual question which should generally be left to the jury." *Pirani v. Slack Techs., Inc.*, 445 F. Supp. 3d 367, 384 (N.D. Cal. 2020).

Finally, for the same reasons as detailed above that Defendant Bertolini is a control person for purposes of Section 20(a), he is likewise liable as a control person under Section 15. *See supra* at Section II.

## **CONCLUSION**

The Court should deny the Aetna Defendants' motion to dismiss.

DATED: February 27, 2023

*/s/ John J. Rizio-Hamilton*
John J. Rizio-Hamilton (*pro hac vice*)

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Hannah Ross (*pro hac vice*)
John J. Rizio-Hamilton (*pro hac vice*)
Jai Chandrasekhar (*pro hac vice*)
Timothy G. Fleming (*pro hac vice*)
1251 Avenue of the Americas
New York, New York 10020
Tel: (212) 554-1400
Fax: (212) 554-1444
hannah@blbglaw.com
johnr@blbglaw.com
jai@blbglaw.com
timothy.fleming@blbglaw.com

*-and-*

Lauren M. Cruz (*pro hac vice*)
2121 Avenue of the Stars
Suite 2575
Los Angeles, California 90067
Tel: (310) 819-3480
lauren.cruz@blbglaw.com

*Lead Counsel for Lead Plaintiff*
*Los Angeles Fire and Police Pensions*
*and for the Class*

**SHEKARCHI LAW OFFICES**
K. Joseph Shekarchi (Bar No. 4493)
33 College Hill Road
Warwick, Rhode Island 02866
Tel: (401) 827-0100
Fax: (401) 823-1400
joe@shekarchilaw.com

*Liaison Counsel for Lead Plaintiff*
*Los Angeles Fire and Police Pensions*
*and for the Class*