UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| IN RE CVS HEALTH CORPORATION SECURITIES ACT LITIGATION | ) ) ) ) ) ) ) ) ) ) | No. 1:19-cv-434-MSM-LDA |

MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

## I.     INTRODUCTION

This is the second of two securities cases challenging practices of the CVS Health Corporation ("CVS") and its officers and agents to come before this Court. In 2019, this case was filed as a putative class action by the Waterford (Connecticut) Township Police & Fire Retirement System ("Waterford") seeking to impose liability on CVS for what it claimed were false and misleading statements surrounding CVS's 2018 acquisition of Aetna Insurance Corporation. Waterford, like other retirement funds joining in the action, was an investor in Aetna whose stock was exchanged for CVS shares as part of the merger. The same year this lawsuit was filed, a group of pension funds that had been investors in Omnicare Corporation, a company acquired by CVS in 2015, also sued CVS for what it similarly claimed were false and misleading statements CVS had made in connection with the Omnicare acquisition.

1

The lead plaintiff in that case was the City of Miami (Florida) Firefighters' and Police Officers' Retirement Trust.

Both the Omnicare and Aetna acquisitions were part of a larger effort by CVS, according to the lawsuits, to expand its dominance in the pharmaceutical arena of the long-term care world by diversifying its services. Prior to the Omnicare merger, CVS's market share was largely in its retail business, anchored by its brick-and-mortar stores. Omnicare brought it a new customer base of long-term care facilities to which it sold pharmaceuticals. The acquisition of Aetna took it into the insurance world.

The two lawsuits shared common themes. Each contended that the documents CVS was required by law to file in connection with the acquisitions contained false statements and omitted facts that were so material that their omission made other statements misleading. Each contended that CVS painted an overly rosy picture of its operations to convince shareholders of the companies it was acquiring to vote for the merger. Each maintained that CVS's stock had lost value because of the Omnicare acquisition. The Omnicare shareholders complained that CVS's business practices had decimated the value of what Omnicare had brought to the merger. The Aetna shareholders complained that CVS's valuation, in convincing them of the favorability of their merger with CVS, failed to accurately inform them of the losses the Omnicare acquisition had caused to CVS's Retail/Long-Term Care unit. Both lawsuits complained that CVS had concealed the impact of losses of Omnicare's value by writing down losses in Omnicare goodwill too late and too slowly.

The relationship between the two acquisitions, and the two lawsuits, was summarized by the First Circuit in upholding this Court's dismissal of the Omnicare (City of Miami) lawsuit:

> CVS Health is a publicly traded company that provides integrated pharmacy healthcare services and operates thousands of retail stores and clinics across the United States. In 2015, CVS Health acquired Omnicare, then the leading provider of pharmaceutical services to long-term care (LTC) facilities. Plaintiffs allege that the newly acquired LTC business subsequently "hemorrhaged" customers due to CVS Health's mismanagement, including its decision to centralize and standardize a number of operations that Omnicare had previously tailored to each customer. According to the complaint, CVS Health misleadingly concealed these customer losses and their causes so as not to threaten CVS Health's ability to acquire financing for another large acquisition planned for 2018.

*City of Miami Fire Fighters' and Police Officers' Ret. Tr. v. CVS Health Corp.,* 46 F.4th 22, 26 (1st Cir. 2022). That other "large acquisition planned for 2018" was the acquisition of Aetna. *Id.*

The First Circuit's opinion in *City of Miami* provides an obvious and instructive guide for the review of the instant Complaint, one against which the assessment of the Complaint both begins and ends. Because of *City of Miami's* likely impact, this Waterford litigation was stayed while *City of Miami* was pending on appeal. After it was decided, these plaintiffs filed an Amended Complaint (ECF No. 51), which is the operative Complaint. For the same reason that prompted the First Circuit to affirm the dismissal of *City of Miami,* and in the context of pleadings that are similar in relevant respect, the Court finds the Amended Complaint wanting under Fed. R. Civ. P. 12(b)(6) and GRANTS the Motions to Dismiss (ECF Nos. 52, 53).

3

## II. DISCUSSION

### A. Elements of the Action

This action claims liability on the part of CVS Health under (a) Sections 11, 12(a)(2) and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77l and 77o; and (b) Sections 14(a) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78n(a) and 78t(a). None of these sections require that acts be committed with fraudulent intent, but they all impose liability for statements which are false because they are untrue or are misleading because they omit information or facts necessary to make the statement not misleading. While the formulations of this element—falsity or misleading nature—vary slightly from statute to statute, the essence and defining words are the same.[1]

In *City of Miami,* the First Circuit focused on what allegations of pleading would adequately make out a claim for false or misleading statements, even taking the facts pled in the light most favorable to the plaintiff. 46 F.4th at 30. When the

---

[1] Section 11 of the Securities Act, 15 U.S.C. § 77k, imposes liability on those signing or named in a Registration Statement "for untrue statement[s] of a material fact or omission of a material fact required to be stated therein or necessary to make the statements therein not misleading …." Section 12(a)(2), 15 U.S.C. § 77l(a)(2), which governs communications in a prospectus and oral statements, proscribes "an untrue statement of a material fact or [omission of] a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading …." Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 77o, governs solicitation of proxies by communications ""containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading …." Finally, both Section 15 of the Securities Act and Section 20(a) of the Exchange Act impose derivative liability on those who control persons violating certain of the above statutes, thus necessarily incorporating the same false or misleading statement element.

4

facts alleged in this Waterford case are compared to those found wanting in *City of Miami,* the Court reaches a similar result—dismissal for failure to state a claim upon which relief can be granted. That comparison is made below.

The plaintiffs argue that *City of Miami* is not controlling for two reasons. First, they claim that the statutes under which liability was claimed in *City of Miami* required proof of fraudulent intent, and those proscribing the conduct at issue here do not. *See Shaw v. Digit. Equip. Corp.,* 82 F.3d 1194, 1223 (1st Cir. 1996) (fraud not an element of section 11 and 12 claims).[2] Indeed, each Count of the Amended Complaint expressly asserts that it "does not sound in fraud." (ECF No. 51 ¶¶ 330, 343, 355, 360, 375.) Second, the plaintiffs note that the statutes under which liability was alleged in *City of Miami* were different from those at issue. As to the first point, the allegations here are not inadequate because of a heightened pleading standard relevant only in fraud cases or because of any inadequate pleading of fraudulent intent. As discussed below they are inadequate because there are insufficient facts pled to show they were false or misleading *when made*. As to the second point, while the statutes are different, the element that both the Amended Complaint and the *City of Miami* complaint insufficiently pled is common to all of them.

Thus, these are, to be sure, differences but they are differences without a distinction under the circumstances here.

---

[2] *Shaw* has been abrogated on other grounds by statute. *See Silverstrand Invests. v. AMAG Pharms., Inc.,* 707 F.3d 95, 102 (1st Cir. 2013).

The statements at issue in this case and *City of Miami* are similar. Here, the plaintiffs have specified five sets of statements and omissions they allege are actionable:

1. In the Offering Documents, incorporating the 2016 10-K, stating that Omnicare was a material driver of CVS Health's financial success. Specifically, an increase in revenues of 12.6% for the year ended Dec. 31, 2016, was attributed primarily to "the acquisition of Omnicare's LTC operations." (ECF No. 51 ¶ 269.)

2. In the Offering Documents, specifically the 2017 10-K, a representation that the consolidated financial statements, "including the results of its annual goodwill impairment testing and goodwill asset values [were prepared] in conformity with U.S. Generally Accepted Accounting Principles." *Id.* ¶ 281.

3. In the Offering Materials, specifically the 2016 10-K, 1Q17 10-Q, 2Q17 10-Q, 3Q17 10-Q, and 2017 10-K, the Company "purported to warn investors" of potential client loss and/or the failure to win new business. *Id.* ¶¶ 286, 287.

4. The failure of the Offering Documents to disclose additional information relating to the impact of known trends and uncertainties on revenue. *Id.* ¶ 303.

5. Information contained in an investor relations presentation wherein CVS described its LTC business as a "[l]eading provider of pharmacy services in long-term care" through an "integrated healthcare platform [that] offers better care and convenience at a lower cost" and would "enable [the combined company] to deliver superior outcomes at lower cost." *Id.* ¶ 314.[3]

---

[3] The false and misleading statements claimed in *City of Miami* were summarized by the Circuit as:
1. Representations about the financial performance of the LTC business, including statements from the 2015 Form 10-K filed in February 2016 and the quarterly and annual filings for 2016, that an increase in CVS's Retail/LTC segment "was primarily driven by the acquisition of Omnicare." *City of Miami,* 46 F.4th at 27-28. These statements omitted the disclosure "that Omnicare LTC customers were fleeing." *Id.* at 28.
2. A December 2016 claim at an annual investor conference "that CVS Health had 'a leadership position in long-term care with Omnicare.'" *Id.*

6

The alleged false or misleading statements of this case and *City of Miami* are not one-for-one the same, but they share the overall themes that, while CVS Health was touting the success of the merger and the contribution of Omnicare to its position as a "leader" in the LTC industry, the Omnicare customer base was in fact hemorrhaging; that while CVS Health was promoting the success of its "synergies," the integration of the Omnicare business into the CVS model was in actuality a failure contributing to the loss of customers; that customer loss was suggested only as a "future" risk when in fact it was happening at a steady rate at the time; and that CVS's failure to write-down the Omnicare goodwill contemporaneously with the loss of its value presented a misleadingly positive picture of CVS Health's financial situation.

"For allegedly false statements to support a claim of securities fraud, they must be 'false when made.'" *City of Miami,* 46 F.4th at 30 (quoting *Gross v. Summa Four, Inc.*, 93 F.3d 987, 994 (1st Cir. 1996)). While *City of Miami* spoke in terms of pleading

---

3. Statements touting CVS's "deep understanding of [consumers', payors', and providers'] diverse needs through [CVS Health's] unique integrated model" that benefited CVS Health's ability to attract customers, as well as calls in August 2015 and August 2017 proclaiming the success by CVS Health in making it more compelling to facilities and their residents. *Id.* (brackets original)
4. Statements that in a February 2016 earnings call that Omnicare was performing well, in line with expectations due to realization of some "anticipated synergies," and a repetition of that assessment a few months later in a May 2016 earnings call. *Id.*
5. Statements alerting only to future risks facing the LTC business concerning problems retaining existing customers and attracting new ones, repeated in a number of SEC filings, when, according to the plaintiffs, those risks were "already occurring." *Id.*

7

(and ultimately proving) fraud, the "when made" admonition applies equally to non-fraud allegations. It is proof of the *falsity* or misleading nature of the statements that is the factual issue tied to timing, not the intent with which the statements are made. In other words, there must be a correlation between the time frame of the assertion and the "true" state of affairs. The burden is on the plaintiffs to plead sufficient facts to support an inference that, for example, at the time the defendants said the Omnicare acquisition was driving the CVS increase in revenue, it actually was doing the opposite; that when the defendants said CVS Health had successfully employed its anticipated synergies to integrate Omnicare's business into its Retail Unit, those synergies were either not successfully integrated or were causing a drain; and that when the defendants said risks of adverse trends were possible, they had in fact already caused an impairment of goodwill.

It is significant to note that this Court did not find that the *fraud* or *scienter* allegations were insufficiently plead in *City of Miami*. Instead, this Court found the evidence insufficient to show falsity or misleading content. In an opinion the First Circuit called "on the mark," *City of Miami,* 46 F.4th at 26, this Court "[did] not reach the issue of whether the complaint fails to adequately allege scienter" because it found no actionable misstatements. *City of Miami Firefighters' and Police Officers' Ret. Tr. v. CVS Health Corp.,* 519 F. Supp. 3d 80, 86 (D.R.I. 2021).[4] The First Circuit

---

[4] This Court found the statements not actionable because they were mere puffery, were statements of opinion and hope for future success, were protected "forward-looking statements," or were "simply too vague to have been material." *City of Miami,* 519 F. Supp. 3d at 87-90.

8

specifically noted that "[t]he district court did not reach defendants' alternative argument that the complaint failed to adequately plead the element of scienter." *City of Miami,* 46 F.4th at 29. Thus, neither this Court's decision, nor the Circuit's that affirmed it, turned on an allegation of fraud or was a consequence of a heightened standard of pleading.[5] Instead, the *City of Miami* complaint failed under Rule 12(b)(6) because of its "overarching failure to allege material facts inconsistent with defendants' public statements." *Id.* at 33.

An example of that shortcoming was its "failure to establish a reasonably clear timeline of customer losses inconsistent with the company's goodwill disclosure." *Id.* While the plaintiffs here appended a timeline of statements and events in what was presumably an attempt to make up for the *City of Miami* Complaint shortcomings, ECF No. 51-1, a close examination of the Amended Complaint here reveals the same absence of direct inconsistencies between CVS's performance and its representations that would support a conclusion of falsity.

To be considered false, statements must show some contradiction between their content and the actuality. In *Glassman v. Computervision Corp.,* 90 F.3d 617, 634 (1st Cir. 1996), for example, the defendants had claimed that their orders were "generally" shipped within 30 days when the truth was that only 61% of the orders were shipped in that time frame. Finding a 61% shipment rate "consistent" with the

---

[5] The Private Securities Litigation Reform Act ("PSLRA") requires, as to all Section 11 and 12(a)(2) that the plaintiff specify which alleged statements or omissions were false or misleading and the reason(s) why. *In re SeaChange Intern., Inc.,* No. 02-12116-DPW, 2004 WL 240317, at *3 (D. Mass. Feb. 6, 2004).

9

word "generally," the First Circuit held there was no material misstatement. *Id.* Moreover, while taking issue with the word "generally," the plaintiffs had only noted data from one portion (the last month) of one quarter. *Id.* Thus, as in *City of Miami*, the time span of purportedly contradictory data did not adequately line up with the period covered by the alleged false statement.

The absence of a time correlation sufficiently precise to allow the conclusion that events during a specific time period were inconsistent with the characterization of them was the fundamental flaw in the *City of Miami* pleading.

> Two of these allegations cover such broad swaths of time that they effectively provide no date limitation. The second describes a particular competitor who had been pulling an unspecified number of CVS customers "since 2015." The third notes that a regional division of Omnicare suffered customer losses "from 2015 to 2019." For all we can discern from these capacious timeframes, these two losses may not have come anywhere close to their ultimate scale until shortly before the complaint was filed. And we certainly have no basis for finding that CVS Health experienced these losses before it took an appropriate write-down or made an inconsistent statement—indeed, that some losses of customers occurred "since 2015" or "from 2015 to 2019" is entirely consistent with CVS Health's reporting.
> 
> *City of Miami*, 46 F.4th at 32.

Even those allegations that were "tethered to some more precise timeframe," allegations of events occurring "only within particular years"—i.e., "in 2015, "in 2016" and "immediately after the Acquisition"—were insufficiently precise. *Id.*

The Amended Complaint's allegations here suffer from the same generalities. For example, a statement in the 3Q17 10-Q, incorporated by reference into the Registration Statement, claimed no impairment of goodwill "during the three months ended September 30, 2017." (ECF No. 51 ¶ 271.) The seven pieces of data cited to

demonstrate the falsity of that statement, recount a substantial loss of Omnicare business "following CVS's acquisition of Omnicare," a reported loss of one-half of the Omnicare business "by one year after the acquisition," a loss of business "during the 2016-2017 timeframe," "a loss of beds "in 2016 and 2017," a loss of 80,000 – 90,000 beds "a year leading up to its acquisitions" and particularly "by the summer of 2017," a loss of 25% of the business in "spring 2017," a loss of beds "by June 2017," and "an accelerating loss of beds leading up to, and following, Omnicare's acquisition by CVS." (ECF No. 51-1 at 1-2.)  Many of these references are "such broad swaths of time that they effectively provide no date limitation."  *City of Miami,* 46 F.4th at 32.  In addition, as did the *City of Miami* complaint, the plaintiffs did not address whether *increases* of customer beds were offsetting the losses.  Indeed, the timeline acknowledges that "Omnicare acquired pharmacies in the 2016-2017 timeframe to make up for the loss of business," but when it then notes it lost "substantial shares of the acquired business" it refers to broad and imprecise timeframes of "three to six months following the acquisition" and "most likely in the first half of 2017." (ECF No. 51-1 at 3.)  There are no absolute numbers alleged: in other words, the Amended Complaint does not compare, for example, a total *net* number of beds at any given time.  See *City of Miami*, 46 F.4th at 32 ("[T]he complaint provides us with no reason to think that that 2015 loss by itself was both material and not offset by new business.").[6]

---

[6] An example of the plaintiffs' unsuccessful attempt to cure the *City of Miami* complaint is the addition to the original allegation (pre-*City of Miami* complaint) that while "bed loss had always been an issue, [] it did improve for a short time during

11

The second category of alleged untrue and misleading facts involves CVS's warnings that risks existed which could result in losses in the future. (ECF No. 51 ¶¶ 286-302.) The plaintiffs contend that at the time CVS was warning of future risks, trends were already occurring that jeopardized revenue. For example, the plaintiffs contend that warnings in the 2016 and 2017 10-K and 10-Qs, also incorporated into the Registration Statement, of "sanctions and remedial actions" relating to reimbursements by government programs had already translated into findings of violations. Allegedly, CVS was refilling prescriptions without refill authorizations or new prescriptions. The Amended Complaint refers to this as a "rollover practice," describing that in filling prescriptions CVS Health simply "rolled over" the previous prescription into an authorization for more medication without actually receiving a renewed or new authorization. The failure to acknowledge these "widespread violations," the Amended Complaint alleges, constituted omissions that made the warnings implying only a future adverse impact misleading. But again, against that 2016 and 2017 timeframe, the data alleged to show a contemporaneous threat consisted of, for example, Former Employee 24's disclosure that while he was Director of Operations *from 2015 through November 2019,* 1,500 assisted living communities "broke state and federal law." It also cites "longstanding lack of legal compliance . . . which had been ongoing since at least 2012." One would have to assume that

---

which Omnicare lost only 80,000-90,000 beds a year. Bed loss 'creeped back up' (above the 80,000-90,000 bed annual level) following the 2015 CVS acquisition, and subsequently got worse." (ECF No. 51-2 ¶ 139.) This paragraph *still* lacks absolute numbers or even the specific allegation that the loss of 80,000-90,000 beds was a *net* loss, not offset by new beds.

12

"ongoing" meant "all the time" to find that the threat of sanctions was contemporaneous with the warnings. But more importantly, while there are plenty of allegations that reimbursement violations had occurred at some point, there are no factual allegations that any significant sanctions had *in fact* been imposed at a time when CVS Health was simply warning of the *future* possibility of them. So perhaps certain government agencies were paying attention to the "rollover practices" and issuing warnings about them, but the Amended Complaint does not provide any basis for believing that those warnings would or had turned into sanctions that threatened CVS Health's continuing business or revenue.

There is "no absolute duty to disclose all material information," and only that information which securities law imposes a "specific obligation" to disclose must be disclosed. *Cooperman v. Individual, Inc.,* 171 F.3d 43, 49-50 (1st Cir. 1999). Only materially misleading statements are forbidden. A materially misleading statement omits a fact which, had it been disclosed, "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *In re WebSecure, Inc. Sec. Litig.,* 182 F.R.D. 364, 369 (D. Mass. 1998) (quoting *In re Computervision Sec. Litig.*, 869 F. Supp. 56, 62 (D. Mass. 1994)). For example, a statement that a company endorsed its business model as key to its growth did not require the additional disclosure that only a majority of its board, faced with a minority's opposition, favored the approach. *Cooperman,* 171 F.3d at 51. Thus, even if rollover practices were receiving unwelcome attention, there would be no

13

contradiction of the CVS warning of *future* adverse actions if no sanctions were being imposed or were imminent.

The third set of allegations relates to the same complaint made in *City of Miami;* that CVS wrote down its goodwill far too late, that goodwill was being impaired over a long time and was not acknowledged in the financial statements until the first goodwill write-down—of some $2.3 billion—was taken in November 2016 and, after that date, was written down far too slowly.  Instead, the 2017 10-K reported that goodwill "could, in the future, become impaired." (ECF No. 51 ¶ 274.) The 2017 10-K repeated the admonition noted above that any problems with government benefit reimbursements were future risks, and the Amended Complaint takes the same issue with the temporal accuracy of that warning as discussed above.  There is no greater specificity in the Amended Complaint about the actual state of CVS Health's LTC business than there was in *City of Miami*.  As the First Circuit said in that case, "despite its length, [the complaint] fails to allege sufficiently specific facts about the state of the LTC business at particular points in time to enable us to conclude that any of the goodwill write-downs were too late or that any of defendants' alleged misstatements contradicted the state of that business as it then stood." *City of Miami,* 46 F.4th at 31.

The Amended Complaint also repeats CVS's touting of the synergies that enabled it to successfully integrate the Omnicare business into the protocols for its own retail business.  In fact, the plaintiffs complain, CVS was never able integrate its business model and the CVS model was antithetical to the practices that had made

14

Omnicare successful— individual relationships between customers and sales personnel, decentralized distribution, and accommodation of individual customer needs. That may have been the case, but the plaintiffs' proffer of proof is the losses suffered in Omnicare customers and, again, there is not a sufficiently precise correlation of time.

Finally, the plaintiffs assert that the Amended Complaint alleges an independent basis for liability under Section 11 of the Securities Act and Item 303 of Regulation S-K: "pure omissions" liability for an issuer's failure to "make mandated disclosures … in a registration statement." While Section 11(a) creates liability for a "pure omission," see *Macquarie Infrastructure Corporation v. Moab Partners, L.P.*, 601 U.S. 257, 264 (2024), this is not a pure omission case. The facts as pled, described above, advance a theory that CVS's statements were misleading, but that it did make disclosures on the topics the plaintiffs' claims challenge.

### III. CONCLUSION

For all these reasons, the Court GRANTS the Motions to Dismiss (ECF Nos. 52, 53).

IT IS SO ORDERED.

_____
Mary S. McElroy,
United States District Judge
February 5, 2025